STATE OF MISSOURI, Respondent, v. WILLIAM P. LAMBERT, Appellant.

Kansas City Court of Appeals, March 22, 1886.

1. CRIMINAL LAW—LARCENY—WHAT CONSTITUTES .UNDER STATUTE. To constitute the offence of larceny, under the statute, there must be the taking and carrying away of the personal property of another of some value by the defendant, and with the fraudulent purpose to deprive the owner of his property and to wrongfully appropriate the same.

2. PRACTICE—OWNERSHIP—CREDIBILITY OF WITNESSES.—Where the question of ownership is fairly submitted by proper instructions of the trial court, this court will not interfere with the province of the jury to determine the probative force of the evidence and the credibility of the witnesses.

3. —— REJECTION OF INCOMPETENT EVIDENCE.—Where the proof rejected by the trial court, was either incompetent or irrelevant, and could have worked no possible injury to the defendant, this court will not disturb the judgment.

APPEAL from Jasper Circuit Court, HON. M. G. McGREGOR, Judge.

*Affirmed.*

The case is stated in the opinion.

J. W. McINTIRE, for the appellant.
I.   The indictment was drawn under section 1318, Revised Statutes, and the testimony was all to the effect that the mineral was washed out of an old pile of " tailings," the most of which had been dug and mined from other lands than those of the smelting company, prosecutor.   If the defendant was guilty at all, the indictment should have been under section 1317, Revised Statutes, but the indictment in this case was not sufficient under that section, as it did not state the facts or follow the statute.   *State v. Myers,* 20 Mo. 409 ; *State v. Fletcher,* 18 Mo. 425; *State v. Aster,* 65 Mo. 653.

II.   The facts cannot make a case under section 6445, Revised Statutes.   The defendant had bought the "tailings" with the mineral thereon and wash place in 1876, one year prior to the enactment of the mining law, and the title to same vested in him absolutely at that time, and could not be divested by legislative act.   At that time prosecutor had no interest in the land.

III.   The court erred in rejecting evidence tending to show that the prosecutor was not the owner of the property.   In this case there was no trespass, which must exist in every larceny.   *Hale v. Adkins*, 59 Mo. 144.

IV.   The court erred in refusing instructions asked for defendant.   If the mineral had not been mined on the Granby Smelting Company's land, it would not have been the owner of it, unless it had acquired it by purchase.   Prior to the mining law of 1877 (sect. 6443, Rev. Stat.) a miner, under contract with the land owner, was the absolute owner of the lead ore mined or dug. *Long v. Lowe*, 42 Mo. 545.

No brief on file for the respondent.

Philips, P. J.—The defendant was indicted and convicted for stealing a quantity of lead ore of value less than thirty dollars.   The indictment was manifestly based on section 1318, Revised Statutes, which declares, that: "Every person who shall steal, take, or carry away any money, or personal property, or effects of another, under the value of thirty dollars, not being the subject of grand larceny without regard to value, shall be deemed guilty of petit larceny," etc.

The indictment charges, substantially, that defendant, on the ——— day of June, 1882, at the county of Jasper, unlawfully stole, took, and carried away two thousand pounds of lead ore, of the value of twenty-four dollars, the property of the Granby Mining and Smelting Company, a corporation duly incorporated under the laws of the state of Missouri, etc.

I. To constitute the offence charged, it devolved upon the state to maintain by proof three propositions : first, the taking and carrying away of the property by the defendant ; second, that the thing so taken was the personal property of another, and of some value ; and, third, that defendant took it with the fraudulent purpose to deprive such owner of his ownership therein, and to wrongfully appropriate the same.

There is no question made as to the taking and carrying away, as the defendant admits that he loaded the ore into his wagon at Granby, in Newton county, and hauled it to Joplin, in Jasper county, where he was found in possession of it and arrested. The state's evidence tended to show that the Granby Mining and Smelting Company was a corporation at the time, engaged in mining and smelting lead ore at the town of Granby and elsewhere ; that it owned and controlled large bodies of land in and about Granby, containing such mineral, contributory to its business. A brief summary of the state's evidence, bearing on the question of ownership, will more satisfactorily present the strength of the state's case. Kingston, the superintendent of the works at Granby, testified that the wash place, from which defendant took the mineral in question, was what is known as the Philadelphia Company mining land, the same being land owned and controlled by the Granby Mining and Smelting Company ; that defendant washed the mineral from what is known as tailings, from which the mineral had mainly been washed years before by the company ; that the mineral was mined principally on the lands of the Granby company, and that the land from which the defendant took the mineral or tailings was leased in 1872 by the Granby company for two years, and afterwards purchased by it, and that the same was in the possession and under the control of the Granby company continuously up to the time of the asportation in question.

Green testified that he was at the time in question cashier of the Granby company, and that the mineral

taken had been washed from tailings on the Granby company's land ; the mineral was the property of the Granby company.

Bailey testified that on the night of the taking of the mineral by the defendant, he was sent by the Granby company in pursuit of the defendant ; that when he came up with him in Joplin, he said to him : "My boy, I've got you." Defendant replied : "I don't know. It's all Granby mineral. I'd just as well turn it in here as at Granby."

Peter E. Blow testified, that he was the general manager of the Granby company ; that he was present at the arrest of defendant in Joplin, and said to him : "We have caught you this time." Whereat. defendant said it was Granby mineral, and proposed "to fix the matter up," and turn the mineral into the Joplin furnace, controlled by Blow for the Granby company.

Certainly this was ample evidence to go to the jury, and to warrant them in finding the ownership of the property in the Granby company.

The defendant, while admitting the taking and carrying away, claimed and his proof tended to show, that he had not been mining for the Granby company for more than two years theretofore, and that he had bought the wash place, with its appliances, in 1876, from one Warden, and that most of the tailings, from which the mineral came, was from land owned by one Davis.

It is manifest, however, from defendant's own witnesses, that it was not claimed that all the tailings at this wash came from the Davis land. If, therefore, the jury had given full credit to defendant's evidence, it still left in question the ownership of a part of the tailings from which the property in dispute came. Defendant's testimony and evidence made no pretense that he made any inquiry as to the residue of the tailings, or even asked for permission to wash and remove indiscriminately from the pile.

The question of ownership was quite fairly submitted

by the instructions of the court; and we will not inter-
fere with the province of the jury to determine its pro-
bative force, and the credibility of the witnesses.

Third, as to the fraudulent intent with which the de-
fendant acted, it was quite fairly submitted to the jury.
The court instructed them, that if they believe from the
evidence that defendant bought the wash place and tail-
ings from which the mineral came, or that he carried the
mineral away, believing that he was entitled to the same,
they should find him not guilty.

The proof of defendant's guilty knowledge and evil
purpose was strong. He secretly loaded the mineral
into his wagon at night, and moved off with it between
twelve and one o'clock in the night. He was guilty of
misrepresentation as to where the mineral came from
while trying to sell it in Joplin next morning; and when
overtaken by the agents of the Granby company, he vir-
tually admitted his wrong, by trying "to fix" the mat-
ter up, and proposing to turn the property over to the
owner.

It is useless to discuss other provisions of the
statute, to which our attention is called, under which
the defendant might have been indicted. Appellant
insists that he was indicted under the section of the
statute first above quoted, and the proof sustains the
charge.

II. Appellant complains of the action of the trial
court in rejecting certain evidence offered by him. We
have given this objection due consideration, and are un-
able to see that the action of the court could have worked
any possible injury to defendant. The rejected proof
was either incompetent or irrelevant.

The judgment of the circuit court is affirmed. Elli-
son, J., concurs; Hall, J., absent.